IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATATREASURY CORPORATION | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 2:06-cv-72-DF |
| | § | |
| WELLS FARGO & COMPANY, et al. | § | |
| | § | |
| Defendants | § | |
| | § | |

**FIRST AMENDED ANSWER AND COUNTERCLAIM OF DEFENDANTS
U.S. BANCORP AND U.S. BANK NATIONAL ASSOCIATION
TO PLAINTIFF DATATREASURY CORPORATION'S
FOURTH AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

**FILED UNDER SEAL PURSUANT TO THE AMENDED PROTECTIVE
ORDER ENTERED IN THIS CASE ON JUNE 26, 2009**

Defendants U.S. Bancorp and U.S. Bank National Association (collectively "U.S. Bank") state for their First Amended Answer to Plaintiff's Fourth Amended Complaint for Patent Infringement ("Fourth Amended Complaint"), as follows:

## THE PARTIES

1.    U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

2.    U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

3.    U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

4.    U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

5.    U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

6.    U.S. Bank admits that defendant U.S. Bancorp is a Delaware corporation and has a place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402-7014.  U.S. Bank admits that defendant U.S. Bancorp has been served, and has appeared and answered in this case.  U.S.

2

Bank denies each and every remaining allegation in paragraph 6 of the Fourth Amended Complaint.

7.     U.S. Bank admits that defendant U.S. Bank National Association is a wholly-owned subsidiary of defendant U.S. Bancorp and has a place of business at 425 Walnut Street, Cincinnati, Ohio 45202. U.S. Bank admits that defendant U.S. Bank National Association has been served, and has appeared and answered in this case. U.S. Bank denies each and every remaining allegation in paragraph 7 of the Fourth Amended Complaint.

8.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

9.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

10.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

11.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

12.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

13.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

14.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

15.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

16.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

17.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

18.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

19.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

WASH_6584474.1

20.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

21.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

22.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

23.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

24.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

25.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

26.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

WASH_6584474.1

27.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

28.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

29.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

30.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

## JURISDICTION AND VENUE

31.     U.S. Bank admits that this action is brought under the patent laws of the United States, Title 35 of the United States Code.  U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph.  U.S. Bank further denies each and every remaining allegation in paragraph 31 of the Fourth Amended Complaint.

32.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 32 of the Fourth Amended Complaint.

33.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 33 of the Fourth Amended Complaint.

34.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank admits that U.S. Bank is an owner or user of Viewpointe Archive Services, LLC. U.S. Bank further denies each and every remaining allegation in paragraph 34 of the Fourth Amended Complaint.

35.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank admits that a related litigation involving DataTreasury and Viewpointe Archive Services, LLC is pending in this District, Case No. 2:05-CV-290. U.S. Bank further denies each and every remaining allegation in paragraph 35 of the Fourth Amended Complaint.

36.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank admits that U.S. Bank is an owner or current user of services provided by The Clearing House Payments Company, LLC. U.S. Bank further denies each and every remaining allegation in paragraph 36 of the Fourth Amended Complaint.

WASH_6584474.1

37.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 37 of the Fourth Amended Complaint.

## **PATENT INFRINGEMENT**

38.     U.S. Bank admits that U.S. Patent No. 5,910,988 ("the '988 patent") appears, on its face, to have issued on June 8, 1999 and identifies Claudio Ballard as the named inventor. U.S. Bank admits that the '988 patent went through a re-exam with the USPTO. U.S. Bank denies each and every remaining allegation in paragraph 38 of the Fourth Amended Complaint.

39.     U.S. Bank admits that U.S. Patent No. 6,032,137 ("the '137 patent") appears, on its face, to have issued on February 29, 2000 and identifies Claudio Ballard as the named inventor. U.S. Bank admits that the '137 went through a re-exam with the USPTO. U.S. Bank denies each and every remaining allegation in paragraph 39 of the Fourth Amended Complaint.

40.     U.S. Bank admits that U.S. Patent No. 5,265,007 ("the '007 patent") appears, on its face, to have issued on November 23, 1998 and identifies John L. Barnhard, Jr., Thomas K. Bowen, Terry L. Geer, and John W. Liebersbach as the named inventors. U.S. Bank denies each and every remaining allegation in paragraph 40 of the Fourth Amended Complaint.

41.     U.S. Bank admits that U.S. Patent No. 5,583,759 ("the '759 patent") appears, on its face, to have issued on December 10, 1996 and identifies Terry L. Geer as the named inventor. U.S. Bank denies each and every remaining allegation in paragraph 41 of the Fourth Amended Complaint.

42.     U.S. Bank admits that U.S. Patent No. 5,717,868 ("the '868 patent") appears, on its face, to have issued on February 10, 1998 and identifies David L. James as the named

8

inventor. U.S. Bank denies each and every remaining allegation in paragraph 42 of the Fourth Amended Complaint.

43.     U.S. Bank admits that U.S. Patent No. 5,930,778 ("the '778 patent") appears, on its face, to have issued on July 27, 1999 and identifies Terry L. Geer as the named inventor. U.S. Bank denies each and every remaining allegation in paragraph 43 of the Fourth Amended Complaint.

44.     U.S. Bank denies the allegation in paragraph 44 of the Fourth Amended Complaint.

## COUNT ONE – THE '988 DEFENDANTS

45.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 45 of the Fourth Amended Complaint.

46.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 46 of the Fourth Amended Complaint.

47.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 47 of the Fourth Amended Complaint.

## COUNT TWO – THE '137 DEFENDANTS

48.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 48 of the Fourth Amended Complaint.

49.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 49 of the Fourth Amended Complaint.

50.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 50 of the Fourth Amended Complaint.

## COUNT THREE – THE '007 DEFENDANTS

51.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 51 of the Fourth Amended Complaint.

52.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Fourth Amended Complaint with respect to

WASH_6584474.1

each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 52 of the Fourth Amended Complaint.

53.      U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 53 of the Fourth Amended Complaint.

## COUNT FOUR – THE '759 DEFENDANTS

54.      U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

55.      U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

56.      U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

## COUNT FIVE – THE '868 DEFENDANTS

57.      U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 57 of the Fourth Amended Complaint.

WASH_6584474.1

58.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 58 of the Fourth Amended Complaint.

59.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph. U.S. Bank further denies each and every remaining allegation in paragraph 59 of the Fourth Amended Complaint.

## COUNT SIX – THE '778 DEFENDANTS

60.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

61.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

62.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Fourth Amended Complaint and, accordingly, denies the allegations in this paragraph.

## COUNT SEVEN – VICARIOUS LIABILITY

63.     U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the Fourth Amended Complaint with respect to each defendant other than U.S. Bank and, accordingly, denies the allegations in this paragraph.

12

U.S. Bank further denies each and every remaining allegation in paragraph 63 of the Fourth Amended Complaint.

## CONSOLIDATION OF 2005 CASES

64. U.S. Bank admits that other litigation involving DataTreasury (Case Nos. 2:05-cv-291, 2:05-cv-292, and 2:05-cv-293) is pending in this District. U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64 of the Fourth Amended Complaint and accordingly, denies each and every remaining allegation in this paragraph.

65. U.S. Bank admits that Case Nos. 2:05-cv-291, 2:05-cv-292, and 2:05-cv-293, pending in this District, have been consolidated into this case. U.S. Bank is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65 of the Fourth Amended Complaint and accordingly, denies each and every remaining allegation in this paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT)

66. U.S. Bank does not directly infringe, contributorily infringe, or induce infringement of any valid and enforceable claim of the '988, '137, '007 or '868 patent, either literally or by the application of the doctrine of equivalents.

### SECOND AFFIRMATIVE DEFENSE
### (INVALIDITY)

67. The asserted claims of the '988, '137, '007 and '868 patent are invalid and/or unenforceable on the grounds that the purported invention claimed therein fails to meet the conditions of patentability specified in Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

13

### THIRD AFFIRMATIVE DEFENSE
### (STATUTE OF LIMITATIONS)

68.     To the extent DataTreasury seeks recovery for any alleged infringement committed more than six years prior to the filing of the complaint, such recovery is barred by 35 U.S.C. § 286.

### FOURTH AFFIRMATIVE DEFENSE
### (NOTICE REQUIREMENT)

69.     To the extent DataTreasury seeks damages for any alleged infringement committed by U.S. Bank, such claim for damages for patent infringement is limited by 35 U.S.C. § 287 to those damages occurring only after notice of infringement.

### FIFTH AFFIRMATIVE DEFENSE
### (LACK OF PERSONAL JURISDICTION)

70.     The Eastern District of Texas lacks personal jurisdiction over U.S. Bank.

### SIXTH AFFIRMATIVE DEFENSE
### (IMPROPER VENUE)

71.     Venue is not proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391(c) because U.S. Bank does not maintain any contacts within this district.

### SEVENTH AFFIRMATIVE DEFENSE
### (LACHES)

72.     The relief sought by DataTreasury is barred in whole or in part by the doctrine of laches.

### EIGHTH AFFIRMATIVE DEFENSE
### (NO ALTER EGO LIABILITY)

73.     U.S. Bank is not the alter ego of Viewpointe Archive Services, LLC, Small Value Payments Company, LLC and/or The Clearing House Payments Company, LLC and, accordingly, is not responsible for their actions.

WASH_6584474.1

## NINTH AFFIRMATIVE DEFENSE
### (LICENSE)

74.     On information and belief, U.S. Bank holds actual and/or implied licenses to the '988, '137, '007 and/or '868 patents.

## TENTH AFFIRMATIVE DEFENSE
### (INEQUITABLE CONDUCT)

75.     The '988 and '137 Patents are unenforceable as a result of inequitable conduct in their procurement.

76.     Ballard is the named inventor on the '988 and '137 Patents. Ballard owed a duty of candor to the United States Patent and Trademark Office ("USPTO") in connection with the prosecution of the '988 and '137 Patents and their subsequent reexaminations.

77.     J. Michael Martinez de Andino ("Martinez") is a registered patent attorney. Martinez was associated with the prosecution of the '988 and '137 Patents. He owed a duty of candor to the USPTO in connection with the '988 and '137 Patents.

78.     Mark Taylor ("Taylor") is a registered patent attorney. Taylor was associated with the prosecution of the '988 and '137 Patents. He owed a duty of candor to the USPTO in connection with the '988 and '137 Patents.

79.     Jay Kesan ("Kesan") is a registered patent attorney. On information and belief, Kesan drafted portions of the '988 and '137 Patents and was associated with their prosecution. He owed a duty of candor to the USPTO in connection with the '988 and '137 Patents.

80.     Greg Gonsalves ("Gonsalves") is a registered patent attorney. On information and belief, Gonsalves drafted portions of the '988 and '137 Patents. He owed a duty of candor to the USPTO in connection with the '988 and '137 Patents.

81.     Abraham Hershkovitz ("Hershkovitz") is a registered patent attorney associated with the reexamination of the '988 and '137 Patents, and with the prosecution of other patent

15

applications which name Ballard as an inventor, including applications that are related indirectly or directly by continuation, divisional and/or continuation-in-part to the '988 and '137 Patents, for example, U.S. Patent Application Ser. No. 09/454,492.  He owed a duty of candor to the USPTO in connection with reexamination of the '988 and '137 Patents.

82.     In 1998 and 1999, at the time the '988 and '137 Patents were initially being prosecuted, the USPTO had established rules in 37 CFR 1.102 and procedures that allowed patent applicants to file a request or petition to make an application "special."   If certain conditions are met, the application will be taken up for examination out of turn ahead of other applications and continue to receive expedited treatment throughout prosecution to issuance.  In order to qualify for "special" status, an applicant must satisfy one of the criteria set forth in MPEP 708.02.  Petitions to Make Special were filed and granted in both of the '988 and '137 Patents.  The criteria under which the Petitions were filed were the Accelerated Examination criteria set forth in MPEP 708.02 VIII.

83.     The '988 Patent is unenforceable because those associated with the filing and prosecution of the '988 Patent violated their duty of candor and good faith in dealing with the USPTO by making material misrepresentations about the prior art in a Petition to Make Special and Accelerate Examination Under 37 CFR Section 1.102(d), filed on October 23, 1998 (the "'988 PTMS").  The '137 Patent is also unenforceable because those associated with the filing and prosecution of the '137 Patent violated their duty of candor and good faith in dealing with the USPTO by making material misrepresentations about the prior art in a Petition to Make Special and Accelerate Examination Under 37 CFR Section 1.102(d), filed on February 16, 1999 (the "'137 PTMS").

16

84.     USPTO rules regarding Petitions to Make Special require an applicant for a Petition to Make Special to conduct a pre-examination search directed to the invention as claimed in the application. Attorney Taylor did not conduct such a search or order such a search to be conducted by another, and has no direct knowledge that a search was conducted, even though he signed the Petition to Make Special for the '137 Patent stating that the required search had been conducted. (Taylor deposition of June 2, 2004, at 46:18-48:24). More particularly, the Petition To Make Special (PTMS) filed during the prosecution of the '988 Patent was submitted on October 23, 1998, and signed by Martinez and the PTMS filed during the prosecution of the '137 Patent was submitted on February 16, 1999, and signed by Taylor. Each of the petitions, on the first page, represent to the USPTO that a pre-examination search was conducted in certain specifically identified classes and subclasses, as required by USPTO procedures. On information and belief, some, if not all, of the listed subclasses were not searched, or not completely searched, and therefore Martinez and Taylor made affirmative material misrepresentations to the USPTO in the petitions, with an intent to deceive.

85.     Both Martinez and Taylor affirmatively represented to the USPTO that the prior art patents in a small select group of classes/subclasses had been searched at a time when neither had a factual basis for making the representation. Neither had conducted the search. Neither had instructed anyone to conduct such a search. Neither acknowledged any direct knowledge that a search was conducted, even though both signed the PTMSs stating that the required search had been conducted. (Taylor deposition of June 2, 2004, at 46:18-48:24). The only explanation is that the patents identified in the Petitions to Make Special came from the listed classes/subclasses and therefore it was those classes/subclasses that must have been searched.

17

(Taylor deposition of June 2, 2004, at 46:18-48:24). There is no evidence establishing that a search in the specified classes/subclasses had been done at the time the PTMSs were signed.

86. This highly material false statement was made in the PTMSs filed by Martinez and Taylor on October 23, 1998 and February 16, 1999 respectively, and resulted in the grant of the PTMSs and expedited examination by the USPTO.

87. More specifically, at the time in early 1999, that Taylor added a representation to the '137 PTMS that subclass (382/7) had been searched, he could have had no basis in fact for adding such a representation because subclass 382/7 had been abolished almost four years earlier by USPTO classification order 1542, dated May 2, 1995. Additionally, two more subclasses (379/91 and 379/96) that Taylor and Martinez represented had been searched in both the PTMSs in the '988 and '137 Patents were abolished on July 1, 1997, by USPTO classification order 1650, dated July 1, 1997, well over a year before the first PTMS (in the '988 application) was filed. Further, fifteen (15) more subclasses in class 395, said to have been searched in both of the petitions, were abolished on September 2, 1997, by USPTO classification order 1659, dated September 2, 1997, nearly one year before the first PTMS (in the '988 application) was filed. The fact that there are no patents from class 395 cited in the PTMS indicates that the fifteen subclasses in class 395 were likely not searched as well.

88. On information and belief, statements in the PTMSs regarding which classes/subclasses were searched would have been relied on by the Petitions Examiner at the USPTO when deciding to grant the PTMSs because such a statement was a requirement for granting the Petitions to Make Special. Additionally, on information and belief, Examiner Cangialosi would have relied on the statements that a search was conducted in the classes/ subclasses indicated when examining the application on the merits.

18

89.     The statement in the PTMSs that a search was made of specific classes and subclasses was a requirement of the USPTO procedures and necessary for grant of the petition. It therefore was relied upon by the USPTO for grant of the petition and prompted expedited examination of the application.  Had the Petitions Examiner known the search was not done or was incomplete, the Petitions Examiner would not have granted the Petitions to Make Special. Therefore, the identification of the field of search was material information.  The false statements regarding the field of search in the PTMSs was a violation of the duty of candor.  Since each of the Petitions to Make Special involved advancement of the entire respective patent application, the misrepresentations affected all limitations and all claims of the respective '988 and '137 Patents.

90.     An additional requirement for the grant of a PTMS is that the petitioner must submit a detailed discussion of the references most closely related to the subject matter encompassed by the claims with particularity required by 37 CFR 1.111 (b) and (c), and how the claims are patentable over the references.  The representations aid the examiner during the examination process and are required by the USPTO for advancing the application out of turn. The characterizations of the content of a number of the references misrepresent the content of those references.

91.     In the '988 PTMS, Martinez identified several references "deemed most closely related to the subject matter encompassed by the claims" including U.S. Patent Nos. 4,201,978 ("Nally '978"); 4,264,808 ("Owens '808"); 4,694,147 ("Amemiya et al. '147"); 5,144,115 ("Yoshida '115"); 5,173,594 ("McClure '594"); 5,175,682 ("Higashiyama et al. '682"); 5,321,751 ("Ray et al. '751"); 5,436,970 ("Ray et al. '970"); 5,457,747 ("Drexler et al. '747"); 5,506,691 ("Bednar '691"); 5,647,017 ("Smithies et al. '017"); and 5,657,389 ("Houvener

WASH_6584474.1

'389"). Each of the references identified in the '988 PTMS is admitted prior art to the '988 Patent.

92.     Taylor identified these same references in the '137 PTMS and described them as "deemed most closely related to the subject matter encompassed by the claims." In addition, Taylor identified several other references "deemed most closely related to the subject matter encompassed by the claims" including U.S. Patent Nos. 5,187,750 ("Behera et al. '750"); 5,444,794 ("Uhland, Sr. '794"); 5,484,988 ("Hills et al. '988"); 5,602,933 ("Blackwell et al. '933"); 5,602,936 ("Green et al. '936"); 5,751,842 ("Riach et al. '842"); 5,781,654 ("Carney et al. '654"); and 5,784,503 ("Bleeker, III et al. '503"). Each of the references identified in the '137 PTMS is admitted prior art to the '137 Patent.

Misrepresentations about the Owens '808 Patent

93.     In the '988 PTMS and the '137 PTMS, Martinez and Taylor, respectively, described "how the claimed subject matter is patentable" over each of the identified references. Martinez represented to the USPTO in the '988 PTMS that Owens '808 "does not teach or disclose a communication network for the transmission of transactional data within or between one or more data access subsystems and at least one data processing subsystem." ('988 PTMS, pg. 2; '137 PTMS, pg. 2). On information and belief, Martinez and Taylor, both associated with the prosecution of the '988 and '137 Patents, made this false statement with an intent to deceive the USPTO.

94.     The language "a communication network for the transmission of transactional data within or between one or more data access subsystems and at least one data processing subsystem" is relevant to the limitation with almost identical language in claim 1 (and dependent claims 2, 16 and 18), of the '988 Patent, and claim 1 (and dependent claims 2, 16 and 18) and

20

claim 42 of the '137 Patent, and is relevant to the method step limitation of "transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location" recited in claim 26 (and dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claim 43 of the '137 Patent.

95.     More particularly, it is clear from the front page of Owens '808 that it does disclose "a communication network for transmission of transaction data," "a data access subsystem," and "at least one data processing subsystem." Figure 1, shown on the front page of Owens '808 clearly shows a data access subsystem 12, a data processing subsystem 14 and a communication network 88, 90 and 102 for communication between the subsystems.  The Abstract makes clear that transactional data is captured at a point of acceptance (remote data access subsystem) and transmitted to a processing center (central data processing subsystem), thus indicating that the transactional data is transmitted between a data accessing subsystem and the data processing subsystem.  (Owens '808, Abstract).

96.     The description in Owens '808 of Figure 1 at col. 8, lines 28 to 60, and col. 12, lines 7-37 adds further details clearly establishing the false statement made regarding Owens '808 (*see, e.g.*, "All images and data coming into or going out of the IPC 14 are controlled by the communication means 88, which performs all handshake protocol, logical addressing and communications packaging, and which directs all incoming images and data to the appropriate file means…." 12:17-23); (*see*, also, references to the banking "subsystems," at Owens '808 12:32-34).

97.     Figure 9 of Owens '808, and its description at col. 19, line 55 to col. 20, line 39, also shows "a communication network for the transmission of transactional data within or between one or more data access subsystems and at least one data processing subsystem."

21

Figure 9 reflects the data access subsystems at the bank branches, the data processing subsystem ("Image Processing Center") and the communication links between them through Communication Means 88. It is clear from the Abstract and the description of Figure 9 that it is transaction data that is being captured, transmitted and processed. The materiality of these misrepresentations is evidenced by, among other things, the fact that Taylor and Martinez characterized the prior art submitted in the PTMSs as "the references deemed most closely related to the subject matter encompassed by the claims…." ('988 PTMS, pg. 1; '137 PTMS, pg. 1).

<u>Misrepresentations about the Houvener '389 Patent</u>

98.     In the '988 PTMS, Martinez also described "how the claimed subject matter is patentable" over Houvener '389. Martinez represented to the USPTO in the '988 PTMS and Taylor represented in the '137 PTMS that Houvener '389 "does not include any form of arrangement for capturing and sending paper transaction data nor does it include any means for processing, sending, verifying and storing any paper transaction data…." ('988 PTMS, pg. 4; '137 PTMS, pg. 4).

99.     Taylor made this same representation to the USPTO about the teaching in Houvener '389 in the '137 PTMS. Both of these statements were false. Martinez and Taylor made these false statements. On information and belief, Martinez and Taylor made false statements regarding Houvener '389 with an intent to deceive the USPTO.

100.     Contrary to Martinez's and Taylor's representations to the USPTO, Houvener '389 discloses an arrangement for capturing and sending paper transaction data, i.e., a check scanner. This is an affirmative false representation. In fact, Taylor himself acknowledged the misrepresentation to the USPTO in his deposition when he admitted that Houvener does disclose

22

capturing and transmitting paper transaction data. (*See* the Taylor deposition of June 2, 2004, at p. 119-123). The false statements are directly relevant to the claim limitations "capturing and sending paper transaction data" and "capturing an image of paper transaction data and transmitting the captured image" which are respective limitations in claims 1 (and dependent claims 2, 16 and 18) and 26 (and dependent claims 29, 36, 38) of both the '988 Patent and the '137 Patent, and in claims 42 and 43 of the '137 Patent.

101.    Houvener '389 is related to a system and method of positively identifying individuals including a point of identity verification terminal having a means for inputting data presented by a particular individual and a means for exchanging data between the point of verification terminal and a database storage and retrieval site having digital image data unique to persons to be identified. (Houvener '389, Abstract). The patent states that the point of verification terminal may also be used to scan checks. Item 4 shown in FIG. 1 on the front page of Houvener '389 clearly shows a check scanner. The description at col. 5, lines 19-25 states that the check scanner "would be used to scan checking account number information off of a standard personal or company check…." (Houvener '389, col. 5:19-25). A check scanner is certainly an arrangement for capturing paper transaction data.

102.    Houvener '389 states that the information presented at the point of verification terminal is sent to and received by the database site: "Once the account number is entered into the point of identification terminal 3, the terminal would initiate communications via its internal communications means, which could be a modem or wide area network (WAN) device to one of a number of remote database storage sites 9-11 using public phone lines 12. Alternative forms of communications links are envisioned as well, including satellite communications, or dedicated network means." (Houvener '389, at col. 5:19-25). Thus, contrary to the representations in the

23

PTMSs, Houvener '389 does include an arrangement for capturing and sending paper transaction data. (Houvener '389, at col. 5:19-25 and 35-41). The materiality of these misrepresentations is evidenced by, among other things, the fact that applicant's representatives Taylor and Martinez characterized the prior art submitted in the PTMSs as "the references deemed most closely related to the subject matter encompassed by the claims…." ('988 PTMS, pg. 1; '137 PTMS, pg. 1).

<u>Misrepresentations about the Behera '750 Patent</u>

103.    In the '137 PTMS, Taylor described "how the claimed subject matter is patentable" over Behera '750. Taylor represented to the USPTO in the '137 PTMS that Behera '750 "lacks any remote image capture and does not disclose any sort of information sharing network." ('137 PTMS, at pg. 3). This statement was false. On information and belief, Taylor made this false statement with an intent to deceive the USPTO. The statement "lacks any remote image capture and does not disclose any sort of information sharing network" is relevant to the limitation of "one or more remote data access subsystems for capturing and sending paper transaction data …" and at least one communications network for transmission of the transaction data within and between…." in at least claim 1 (and dependent claims 2, 16 and 18) of both the '988 Patent and the '137 Patent.

104.    Contrary to Taylor's representation to the USPTO, Behera '750 discloses remote image capture. Behera '750 also discloses an information sharing network. More particularly, the Abstract of Behera '750 discloses a system for processing checks into digital images, data storing, and retrieving data for monthly statements. Figure 1A shows two DP 1800 document processors 8, each including an "Image Capture" device. Figure 1A also shows a remote interface 24 and a remote workstation 22. Figure 1A shows that the image capture devices are

WASH_6584474.1

networked to the other devices in the system. Thus, a reading of the Abstract and Figure 1A clearly reflects "remote image capture" and an "information sharing network."

105.   It is clear from column 4, lines 43-51 of the Specification as well that Behera '750 discloses "remote image capture" and an "information sharing network." The materiality of these misrepresentations is evidenced by, among other things, the fact that Taylor characterized the prior art submitted in the PTMS as "the references deemed most closely related to the subject matter encompassed by the claims...."

<u>Misrepresentations about the Blackwell et al. '933 Patent</u>

106.   In the '137 PTMS, Taylor also described "how the claimed subject matter is patentable" over Blackwell et al. '933. Taylor represented to the USPTO in the '137 PTMS that Blackwell et al. '933 "does not disclose any form of internetworking and encrypted data communications between subsystems." ('137 PTMS, pg. 4).

107.   On information and belief, Taylor made these false statements with an intent to deceive the USPTO.

108.   Contrary to Taylor's representation to the USPTO, Blackwell et al. '933 discloses a form of internetworking. Blackwell et al. '933 also discloses encrypted data communications between subsystems. The false representation is relevant to the claim limitation "at least one communication network for the transmission of the transaction data within and between the said one or more data access subsystems and said at least one data processing subsystem...and encrypted paper transaction data ...." These limitations are in at least claim 1 (and dependent claims 2, 16 and 18) of both the '988 Patent and the '137 Patent. This statement was false.

109.   More particularly, Blackwell '933 discloses a method for verification of remotely accessed data. Figure 1 of Blackwell '933 shows internetworking (communications network 30)

25

between a network (subsystem) of remote locations (20, 22, and 24) and a network (subsystem) of central, verification locations (30, 32, and 34).

110.    Blackwell '933 also clearly discloses encrypted data communications between the remote and central subsystems at col. 16:14-25, and col. 15:30-49.   The materiality of these misrepresentations is evidenced by, among other things, the fact that Taylor characterized the prior art submitted in the PTMS as "the references deemed most closely related to the subject matter encompassed by the claims…." ('988 PTMS, pg. 1; '137 PTMS, pg. 1).   Additionally, Taylor acknowledged in his deposition that examiners rely on patent attorneys'/agents' statements concerning prior art to some extent, based on the attorneys' duty of candor.   (Taylor deposition of June 2, 2004, at page 51, lines 19-23).

<u>Misrepresentations about the Green, et al. '936 Patent</u>

111.    In the '137 PTMS, Taylor also described "how the claimed subject matter is patentable" over Green et al. '936.   Taylor represented to the USPTO in the '137 PTMS that Green et al. '936 "does not disclose any form of network subsystem with encrypted communication between subsystems nor does it disclose any form of internetwork sharing of image information." ('137 PTMS, pg. 4).   This statement was false.   On information and belief, Taylor made these false statements with an intent to deceive the USPTO.

112.    Contrary to Taylor's representation to the USPTO, Green et al. '936 discloses a form of internetworking sharing of image information.   More particularly, the false statement is: "nor does it disclose any form of internetwork sharing of image information."   This false statement is relevant to limitation of "at least one communications network for transmission of the transaction data within and between…." in at least claim 1 (and dependent claims 2, 16 and 18) of both the '988 Patent and the '137 Patent.

WASH_6584474.1

113.    Figure 3 of Green shows a first network comprising a reader/sorter host controller 312, a reader/sorter device 314, an image server and data migration device 310 and a mainframe computer 308.  Figure 3 makes clear that these devices are part of a network that is separate from network 54.  This first network is shown coupled to a second network 54, which includes customer and teller check viewers 302 and 306.

114.    Figures 3 and 4 show images captured by the front and back image cameras 408 of the first network are transmitted over the second network 54 to be viewed by one or more of the check viewers 300, 302, 304 and 306.  See col. 7:4-57.  Therefore, Green does disclose internetwork sharing of image information.  The materiality of these misrepresentations is evidenced by, among other things, the fact that Taylor characterized the prior art submitted in the PTMS as "the references deemed most closely related to the subject matter encompassed by the claims…"  ('988 PTMS, pg. 1; '137 PTMS, pg. 1).

115.    On information and belief, had the Petitions Examiner been advised of the misrepresentations set forth in the previous 22 paragraphs regarding the prior art made in the PTMSs, the PTMSs would not have been granted.

<u>Certain Material Omissions Made During the Prosecution<br>of the '988 and '137 Patents and Their Reexamination</u>

116.    The '988 Patent and the '137 Patent are also unenforceable because those associated with the filing and prosecution of the '988 Patent and '137 Patent violated their duty of candor and good faith in dealing with the USPTO by intentionally and with deceptive intent, not disclosing material information known to one or more of them.

117.    During prosecution of the '988 application, the Examiner rejected all claims under 35 U.S.C. 103.  See the Office Action of December 29, 1998.  In the Amendment and Response, Ballard's counsel, Taylor, argued that "none of the cited references disclose, teach or suggest a

secure network for document processing based on a remote image capture of paper transaction data, with encrypted communication between subsystems." (Amendment and Response of February 5, 1999, at pg. 4).

118. However, neither Taylor nor Ballard notified the examiner of the '988 application that Ballard believed, contrary to this argument in favor of patentability, that anyone involved in a secure business of transmitting information, such as banking, would regard encryption as "a given" because encryption allows the transmission to be secure. In fact, Ballard subsequently confirmed his opinion with his subsequent testimony that he did not think it was necessary to describe encryption of subsystem identification information in detail in his own patent applications (the '988 and '137 Patents) because people in the field would understand the need for encryption and the knowledge to implement encryption for this type of subsystem identification information. (Ballard deposition of September 20, 2006, at 39:2- 40:22.). These material facts are directly relevant to independent claim 1 (and its dependent claims 2, 16 and 18) and claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents and claims 42 and 43 of the '137 Patent, each of which requires the encryption of data transmitted from the remote data access subsystem to the other claimed subsystems. The withheld information is not cumulative as the Examiner did not have the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art. The information is material as it is directly relevant to the claim limitations discussed above and on information and belief, had the examiner had this withheld information he would not have allowed claims 1 and 26 of the '988 Patent, and claims 1, 26 and 43 of the '137 Patent.

119. Ballard was aware during prosecution of the '988 and '137 applications that the individual elements of the '988 and '137 Patent claims, including encryption of remotely

captured data, when taken separately, were not patentable, but failed to disclose that fact to the examiner. More particularly, the DataTreasury Draft Private Placement Memorandum of March 1999 (D054693-D054732), at page 36, listed the six core elements of the '988 and '137 Patents as including "[r]emote capture of image, data and transaction information" and "[e]ncrypt remotely captured image/data/biometric information and transmit via any secure transmission medium to a centralized facility" and stated that "[w]hen taken separately, none of the above elements could be patented, either because they are already patented, or the element has been in the public domain for too long."

120. Despite his awareness of the provisions of the Private Placement Memorandum noting the unpatentability of encrypting communications between subsystems and other elements of the '988 and '137 Patents, Ballard failed to inform the USPTO of this fact. This failure to provide material information constitutes a misrepresentation by omission that is directly relevant to the claim limitation "with the data access subsystem providing encrypted subsystem identification information and encrypted paper transaction data to the data processing subsystem" of claim 1 (and its dependent claims 2, 16 and 18) of both the '988 and '137 Patents, and is relevant to the method step limitations of "encrypting subsystem identification information and the transaction data" and "transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location" recited in Claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claim 43 of the '137 Patent, and these were material misrepresentations. The withheld information is not cumulative as the Examiner did not have the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art. The information is material as it is directly relevant to the claim limitations discussed above and on

29

information and belief, had the examiner had this withheld information he would not have allowed claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent.

121. It is a violation of the duty of candor for Ballard to maintain on the one hand that it is his position that subsystem ID encryption was so well known to a person of ordinary skill in the art at the time his invention was made that it was not necessary to describe it in detail in his patent application to support his claims, and on the other hand argue to the USPTO that subsystem ID encryption is the reason the claims are patentable over the prior art. On information and belief, material information as discussed in the previous three paragraphs was withheld with an intent to deceive the USPTO. These misrepresentations and associated omissions are directly relevant to the claim limitation "with the data access subsystem providing encrypted subsystem identification information and encrypted paper transaction data to the data processing subsystem" of claim 1 and each of its dependent claims of both the '988 and '137 Patents, and claim 42 of the '988 Patent and is relevant to the method step limitations of "encrypting subsystem identification information and the transaction data" and "transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location" recited in claim 26 and each of its dependent claims of both the '988 and '137 Patents, and claim 43 of the '137 Patent. On information and belief, Ballard intentionally withheld the information on subsystem ID encryption to obtain allowance of the '988 and '137 Patents. The examiner relied on the foregoing arguments made by Taylor as evidenced by the fact that the application was found allowable in the next office communication without any other stated reasons for allowance. On information and belief, had the examiner had the information regarding subsystem ID encryption, at least claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent would not have been allowed. The withheld

WASH_6584474.1

information of the previous three paragraphs is not cumulative as the Examiner did not have the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art.

Material Omissions and Misrepresentations
Made During the '988 and '137 Patent Reexaminations

122.    The '988 and '137 Patents are also unenforceable because those associated with the '988 and '137 Patent reexaminations intentionally did not disclose certain material information to the USPTO in connection with the reexamination proceedings, including without limitation:  prior art, search reports, rejections, statements, declarations or affidavits, and other material information associated with other patent applications which name Ballard as an inventor, as well as information known to Ballard about the prior art and obviousness of features recited in the claims of the '988 and '137 Patents.

123.    In addition, Ballard has made the following sworn statements with material information: (a) August 5, 2002 Affidavit in connection with European Patent Application No. 98942251.4 / European Patent, EP1008086; (b) January 30, 2006 Declaration in connection with related litigation involving the '988 and '137 Patents submitted to the USPTO during the reexamination proceedings; and (c) January 30, 2007 Declaration in connection with the reexamination proceedings for the '988 and '137 Patents.  The January 30, 2006 Declaration is materially inconsistent with the August 5, 2002 Affidavit.  The August 5, 2002 Affidavit and other material information and documents relating to European Patent Application No. 98942251.4 and other foreign counterpart patent applications were not disclosed to the USPTO during the reexamination proceedings.  More particularly, in connection with the reexamination of the '988 and '137 Patents, in order to antedate the Geer patent and ANSI document to remove them as prior art so they could no longer be used to reject the claims, Hershkovitz submitted to

31

the USPTO's reexamination examiner a copy of a Declaration of Ballard in which he states that he first came up with the invention of the '988 Patent and the '137 Patent in July of 1994. (Office Action Response filed January 30, 2007, in reexamination proceeding)  However, Hershkovitz never disclosed to the USPTO that Ballard had previously submitted to the European Patent Office an affidavit swearing that he first invented the subject matter of the '988 and '137 Patents in July of 1996, explicitly stating in the affidavit, "In July 1996 I invented a novel computer system for the central management, storage and report-generation of remotely-captured paper transactions from printed documents."  (August 5, 2002 Affidavit submitted in connection with European Patent Application No. 98942251.4 / European Patent EP1008086) The information in the affidavit submitted to the European Patent Office was material and not cumulative because it was unknown to the Examiner and it contradicts a sworn statement, submitted by Ballard, that Ballard intended the USPTO to rely on the sworn statement to antedate the Geer reference.  Had the examiner been made aware that Ballard had previously sworn to an invention date of July of 1996, he would have required further explanation and clarification and would have continued to question the remaining statements made by Ballard to the USPTO until and unless the discrepancy between the sworn statements had been resolved to the examiner's satisfaction.  This withheld information of the conflicting affidavit is relevant to all claims of the '988 and '137 Patents.

124.    On information and belief, Ballard and Hershkovitz knew of this information and its materiality and intentionally and with deceptive intent, failed to disclose the information to the USPTO and/or intentionally misrepresented material information to the USPTO.

WASH_6584474.1

<u>Material Omissions and Misrepresentations Made During the '988 and '137 Patent
Reexaminations Related to Patent Litigation Filed by DataTreasury</u>

125.    The '988 and '137 Patents are also unenforceable because Hershkovitz and
Ballard, two among those associated with the '988 and '137 Patent reexaminations, intentionally
and with deceptive intent did not disclose certain material information, filed or served in
connection with the patent litigation filed by DataTreasury, to the USPTO in connection with the
reexamination proceedings, including without limitation: deposition transcripts, invalidity
contentions, invalidity-related motions and briefs, expert report, claim construction briefs, and
other material information.

126.    For example, the following deposition transcripts were not disclosed to the
USPTO in connection with the reexamination proceedings for the '988 and '137 Patents: (a)
March 28, 2006 and September 20, 2006 Depositions of Ballard, which included Ballard's
testimony regarding inconsistencies between the August 5, 2002 Affidavit and the January 30,
2006 Declaration (see supra), the prior art, and the obviousness and inherency of features recited
in the claims of the '988 and '137 Patents; (b) February 28, 2005; March 1, 2005; September 27,
2005; and September 21, 2006 Depositions of Ballard, at least some of which include testimony
regarding the obviousness and inherency of encryption and the absence of an expressed
description of encrypting subsystem identification information.   On information and belief,
Ballard and Hershkovitz knew of this information and its materiality and intentionally and with
deceptive intent, failed to disclose the information to the USPTO.   These facts are directly
relevant to independent claim 1 (and its dependent claims 2, 16 and 18) and claim 26 (and its
dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claims 42 and 43 of the '137
Patent, and require the encryption of data from the remote data access subsystem to the other
claimed subsystems.   The withheld information is not cumulative as the Examiner did not have

33

the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art. The information is material as it is directly relevant to the claim limitations discussed above. On information and belief, had the examiner had this withheld information he would not have allowed claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent.

127. More particularly, the failure to disclose material information from the related patent litigation involving the '988 and '137 Patents directly resulted from Hershkovitz's disregard for Patent Office rules and Federal regulations including: 1) a failure to take steps to ensure that he received all material documents from the lawsuits involving the '988 and '137 Patents after he had received some of the relevant documents; 2) failing to assign an attorney or agent familiar with both the USPTO rules and the patent claims to evaluate whether a first large group of litigation-related documents he received were material and needed to be disclosed to the USPTO; 3) failing to assign anyone to review a second large group of litigation-related documents to determine if they contained material information and needed to be disclosed to the USPTO; 4) failing to submit descriptions regarding the relevance of documents he did submit to the USPTO when some descriptions had been provided to him as part of the litigation-related documents; 5) failing to review multiple deposition transcripts containing the testimony of Claudio Ballard, sole alleged inventor, for possible admissions regarding the prior art and obviousness.

128. More particularly, with full knowledge that the '988 and '137 Patents had been asserted as having been infringed in multiple lawsuits against dozens of defendants (perhaps the largest patent infringement suits pending in the country), and having received hundreds of documents related to one or more of those lawsuits, there is no evidence that Hershkovitz took

steps to ensure that he received all relevant documents from all of those lawsuits. On information and belief there is no evidence that during the reexamination proceedings of the '988 and '137 Patents, Ballard's representative, Hershkovitz made even minimal inquiries of Ballard, litigation counsel, or others involved in the reexamination proceedings, regarding which documents among the hundreds of documents he was provided included material information relevant to the reexamination proceedings. On information and belief there is no evidence that Hershkovitz inquired of Ballard, litigation counsel, or others involved in the reexamination proceedings whether he had all of the documents containing material information relevant to the reexamination proceedings. In fact, Hershkovitz had not been provided with all such material documents.

129.   During the reexamination proceedings for both the '988 and '137 Patents Hershkovitz submitted an IDS citing hundreds of documents. (*See* Information Disclosure Statement in Reexamination Request 90/007,829, December 13, 2006; *see* also, Hershkovitz deposition, at 24:13-16; 26:9-13; 54:14-20).

130.   Knowing that he had been provided with several hundreds of documents from litigation involving the '988 and '137 Patents, and aware that he did not know what was in those documents, Hershkovitz instructed a member of his staff, a legal assistant, to prepare the IDS for his review. (Hershkovitz deposition, at 16:9-23). On information and belief, the legal assistant had not had the formal training of USPTO rules and regulations necessary to practice before the USPTO to select which of the hundreds of documents that were provided to Hershkovitz by the client, DataTreasury, "relate to questions of validity" and therefore should be submitted to the USPTO. (Hershkovitz deposition, at 18:12-19:13). There is no evidence that Hershkovitz explained to the legal assistant how to determine if a particular document relates to questions of

validity of the '988 and '137 Patents. On information and belief, Hershkovitz himself never reviewed any of the documents submitted in the IDS for materiality, or for any other purpose. (Hershkovitz deposition, at 18:5-11 and 54:14-20).

131. Further, Hershkovitz was in possession of another extremely large number of documents (likely hundreds of documents) related to litigation of the '988 and '137 Patents that he did not review at all or submit to the USPTO. In fact he stated in the IDSs: that the Patent Owner has not reviewed documents received from a third party involved in earlier litigation and does not know the relevance of those documents. If the Examiner wishes to obtain a copy of the DVD's which contain the extremely large number of documents, then the Patent Owner will submit a copy of these four DVD's if the Examiner makes such a request. (*See* Information Disclosure Statement in Reexamination Request 90/007,829, December 13, 2006). On information and belief, Hershkovitz offered these documents to the patent examiner knowing that due to time constraints in the examination process, and without the applicant pointing out the relevant information, the Examiner would only give cursory review or no review at all to the documents, even if he asked for them.

132. Furthermore, Hershkovitz admits in testimony that he did not submit Ballard deposition transcripts he was given by the client to the USPTO. In his deposition, Hershkovitz stated that he did not review the deposition transcripts (identified in exhibit 4 of his deposition), but generally submitted everything given to him by his client and trial counsel related to patentability to the PTO. (Hershkovitz deposition, at 24:13-16; 26: 9-13; 54: 14-20). In fact, the Ballard deposition transcripts Hershkovitz was in possession of were not submitted to the USPTO, in disregard of MPEP § 2258(I)(F)(2), stating that admissions by a patent owner are relevant.

133.    All of the foregoing factual misdeeds of Hershkovitz described in the previous eleven paragraphs support an inference of intent to mislead the USPTO and resulted in the nondisclosure of material information from Ballard and related litigation, as described below.

134.    Ballard was substantively involved in the reexamination proceedings of the '988 and '137 Patents.  Ballard testified in a July 28, 2009 deposition that he was heavily involved in the reexamination process, attended interviews with the examiner, attended meetings with the prosecution firm assisting with the reexamination of the Ballard Patents, and reviewed the references in the petition for reexamination before attending the meetings.  (Deposition of Ballard, July 28, 2009, at 557:23 – 559:6).  He would have also been aware of the reasons for allowance of the claims in the reexaminations.  Specifically, as stated by Examiner English the reasons for allowance with respect to claim 1 of the '988 Patent were:

> "Claim 1 of Patent no. 5,910,988 is patentable because the cited prior art patents and printed publications fail to teach a system, as defined in claim 1, wherein one of more remote image capturing subsystems provide encrypted subsystem identification information to a central data processing subsystem."

135.    The reasons for allowance of claim 1 of the '137 Patent during reexamination was identical. (Office Action of October 16, 2007, in the '137 reexamination).

136.    However, Ballard failed to disclose to the USPTO that he had previously admitted under oath in his deposition of September 20, 2006, that encryption of data including encryption of subsystem IDs "was a given" and would have been "second nature" to those in the field at the time he made his invention.  (Ballard deposition of September 20, 2006, at 39:2- 40:22).

137.    This admission made by Ballard is material because it directly refutes the arguments made in favor of patentability by Hershkovitz and the reason for allowance Examiner English stated on the record. Yet Ballard remained silent, in violation of the duty of candor, and did not inform the USPTO of his admission, thus allowing the USPTO to proceed with the

WASH_6584474.1

confirmation of the patent claims without benefit of his contradictory admission. These undisclosed facts are relevant to independent claim 1 (and its dependent claims 2, 16 and 18) and claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claims 42 and 43 of the '137 Patent. On information and belief, had the Examiner had this undisclosed information, he would not have allowed claims 1 and 26 of the '988 and '137 Patents, and claims 42 and 43 of the '137 Patent.

138. Furthermore, Ballard was aware from Examiner English's stated reasons for allowance that Examiner English believed the critical claim feature with respect to obviousness was "remote image capturing subsystems provide[ing] encrypted subsystem identification information to a central data processing subsystem." Ballard believed that this feature was not patentable, yet he stood by without informing Examiner English of this fact. As set forth above, the DataTreasury Draft Private Placement Memorandum of March 1999 (D054693-D054732), at page 36, listed the six core elements of the '988 and '137 Patents as including "[r]emote capture of image, data and transaction information" and "[e]ncrypt remotely captured image/data/biometric information and transmit via any secure transmission medium to a centralized facility" and stated that "[w]hen taken separately, none of the above elements could be patented, either because they are already patented, or the element has been in the public domain for too long.

139. Despite his awareness of this section of the Private Placement Memorandum noting the unpatentability of encrypting communications between subsystems and other elements of the '988 and '137 Patents, Ballard failed to inform the USPTO of this fact. This failure to provide material information constitutes a misrepresentation by omission that is directly relevant to the claim limitation "with the data access subsystem providing encrypted subsystem

38

identification information and encrypted paper transaction data to the data processing subsystem" of claim 1 (and its dependent claims 2, 16 and 18) of both the '988 and '137 Patents, and claim 42 of the '137 Patent and is relevant to the method step limitations of "encrypting subsystem identification information and the transaction data" and "transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location" recited in claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claim 43 of the '137 Patent. These were material misrepresentations and on information and belief were made with an intent to deceive the USPTO.

140. As set forth above, Ballard withheld this highly material admission that encryption of data including encryption of subsystem IDs "was a given" and would have been "second nature" to those in the field at the time he made his invention from the USPTO. He also withheld his statements regarding encryption that were included in the Private Placement Memorandum. These were both violations of his duty of candor and duty of disclosure and on information and belief were done with an intent to deceive the USPTO. These facts are directly relevant to independent claim 1 (and its dependent claims 2, 16 and 18) and claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claims 42 and 43 of the '137 Patent, each of which requires the encryption of data from the remote data access subsystem to the other claimed subsystems.

141. All of the foregoing factual misdeeds of Ballard described in the previous six paragraphs support an inference of intent to mislead the USPTO. The facts are not cumulative as the Examiner did not have the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art. The information is material as it is directly relevant to the claim limitations discussed above. On information and belief, had

WASH_6584474.1

the examiner had this withheld information he would not have allowed claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent.

142.    The MPEP § 2001.06 (c) and 37 CFR § 1.555 contain specific provisions making it clear that the duty of disclosure requires disclosure in a reexamination of information material to patentability from related litigation, including from depositions.

143.    During the reexamination proceedings for the '988 and '137 Patents, the USPTO regulations and sections of the MPEP referenced above were understood by Hershkovitz. (Hershkovitz deposition, March 4, 2009, at 51:4-52:8, 57:5-15).

144.    Having worked as a patent examiner at the USPTO for over 25 years, Hershkovitz was, or should have been, clearly aware of his duty to disclose relevant deposition testimony by the inventor, Ballard.  Ballard himself was aware of his testimony in related litigation concerning the obviousness of encrypting subsystem identification information.   Yet Ballard and Hershkovitz failed to disclose to the USPTO Ballard's deposition testimony concerning the obviousness of encrypting subsystem identification information, which was inconsistent with the arguments that the Hershkovitz firm presented during reexamination to the USPTO and the very reason the USPTO considered claim 1 of the '988 and '137 Patents allowable.  The deposition was not cumulative because it is in direct contradiction to the Examiner's Statement in the Notice of Allowance.  These facts are directly relevant to independent claim 1 (and its dependent claims 2, 16 and 18) and claim 26 (and its dependent claims 29, 36, 38) of both the '988 and '137 Patents, and claims 42 and 43 of the '137 Patent, each of which requires the encryption of data from the remote data access subsystem to the other claimed subsystems.  The facts are not cumulative as the Examiner did not have the information that the inventor believed encryption of the subsystem ID to be obvious and well known by one of ordinary skill in the art.  The

information is material as it is directly relevant to the claim limitations discussed above. On information and belief, a reasonable examiner would have considered contrary arguments made by an applicant in litigation important in deciding whether to allow the application to issue as a patent. On information and belief, had the examiner had the information regarding subsystem identification encryption, at least claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent would not have been allowed.

145. Ballard and Hershkovitz (as a result of his failure to provide for adequate review of the related litigation documents he had been provided) failed to disclose to the USPTO certain highly material information, filed or served in connection with the patent litigation involving the '988 and '137 Patents, including invalidity contentions with related claim charts and expert reports. In particular, Ballard and Hershkovitz each withheld certain invalidity contentions in their possession that were highly material to the patentability of the Ballard patents, including detailed claim charts associated with the invalidity contentions that connect relevant prior art references to each of the claim limitations of each of the asserted claims of the '988 and '137 Patents. Ballard and Hershkovitz did not disclose at least Bank of America's Preliminary Invalidity Contentions served on June 5, 2006, in DataTreasury Corp. v. Bank of America Corporation (Case No. 2:05-CV-292-DF) and the prior art and the claim charts disclosed therein. Hershkovitz was in possession of these claim charts as they were produced by the Hershkovitz firm as document numbers HA-005227 – 006007; HA-007489 – 7603; HA-006749 – HA-006857.

146. The Bank of America Preliminary Invalidity Contentions withheld from the USPTO contained detailed claim charts connecting prior art references to each of the claim limitations of each of the asserted claims of the '988 and '137 Patents. The claim charts on their

face clearly reflect the result of hundreds of hours of attorney work product. Importantly, the Bank of America Preliminary Invalidity Contentions include claim charts connecting the Owens '808 to particular limitations in the '988 and '137 Patents. For example, the claim charts in Bank of America's Preliminary Invalidity Contentions provide precise identification of the portions (by column and line number) of the Owens '808 reference in combination with other references that teach particular limitations of the '988 and '137 Patents. (HA-007571; HA-006833). The reexamination examiner would have found the claim charts in Bank of America's Preliminary Invalidity Contentions, which clearly mapped particular limitations in the '988 and '137 Patents with portions of the Owens '808 reference and other references that disclosed those limitations, to be highly relevant to the patentability of the '988 and '137 Patents. The Owens reference in particular was important to the examiner because it was used, during reexamination, in combination with other references as a basis for rejecting claims 9-16, 19-21, and 30-35 of the '988 Patent, and claims 9-15, 19-21, 30-35, and 42-43 of the '137 Patent. (*See* Office Action Reexamination Control Nos. 90/007,829 and 90/007,830, dated November 30, 2006) Hershkovitz argued in response to those claim rejections that the claims of the '988 and '137 Patents were patentable over the combination of U.S. Patent No. 5,373,550 to Campbell ("Campbell"), Owens '808, and the Minoli textbook because Owens '808 and Minoli "fail to make up for the deficiency in Campbell et al." of lacking "anything about encrypting subsystem identification information." (Response Under 37 CFR 1.111 and Proposed Amendment Under 37 CFR 1.530, January 30, 2007, in Reexamination Proceeding 90/007,829, at page 93, and in Reexamination Proceeding 90/007,830, at page 24.). Examiner English then conceded this argument and allowed the claims. On information and belief, if Examiner English had the claim charts in Bank of America's Preliminary Invalidity Contentions in front of him while considering

42

Hershkovitz's argument, the result would have been different. The withheld Bank of America claim charts provide a detailed description of the prior art references disclosing encryption of subsystem identification information, including a description of Owens, as well as the combination of Owens in view of a PCT application, Owens in view of Campbell, and Owens in view of Minoli. (See HA-007571). None of the prior art before Examiner English, including the prior art claim charts submitted by Hershkovitz, provided detailed information supporting the aforesaid combinations of Owens with other references, including a stated motivation to combine. On information and belief, had Examiner English been provided Bank of America's Preliminary Invalidity Contentions, rather than allowing all pending claims in response to Hershkovitz's arguments, he would have instead issued a rejection of the claims based on a combination of 1) Campbell and Owens '808, 2) Campbell and Owens '808, further in view of the PCT application, and/or 3) Campbell and Owens '808, further in view of Minoli. Therefore, the Bank of America Preliminary Invalidity Contentions and the claim chart discussion of encrypted subsystem identification information regarding claim 1 was material.

147. Moreover, the Bank of America Preliminary Invalidity Contentions withheld by Hershkovitz and Ballard are not cumulative. Though during the reexamination proceedings, Ballard and Hershkovitz submitted three claim charts from litigation related to the '988 and '137 Patents that included analysis of the patentability of the '988 and '137 Patents, those claim charts were deficient as compared to the Bank of America claim chart. (Information Disclosure Statement, dated December 13, 2006; claim charts associated with Ingenico's Preliminary Invalidity Contentions of December 9, 2002 (see HA-000977) ("Ingenico"), First Data Defendants' Preliminary Invalidity Contentions (see HA-000824) ("First Data"), and Preliminary Invalidity Contentions of JP Morgan Chase (see HA-000919) ("JP Morgan Chase")). The JP

Morgan Chase claim chart did not cite to Owens '808 at all for the relevant limitation. The Ingenico claim chart cited to Owens '808 alone, and not in combination with the references cited by Bank of America. Additionally, the Ingenico claim chart identifies as much as nine columns of the patent as relevant, an amount of material that is not particularly helpful to an examiner, where a citation to a column or two will do. The First Data claim chart only discussed a single combination of Owens '808 with another reference, but did not mention any of the aforesaid combinations that were disclosed in the Bank of America invalidity contentions. The aforesaid combinations of Owens '808 are relevant to claim 1 of each of the '988 Patent and the '137 Patent and are relevant to the method step limitations of "encrypting subsystem identification information and the transaction data" and "transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location" recited in claim 26 of both the '988 and '137 Patents. Therefore, information from related litigation that was material to patentability was not disclosed to the USPTO in violation of the duty of candor, and without any valid reason. Ballard was both involved in the reexamination proceedings and, as sole named inventor, knowledgeable regarding ongoing litigation of the '988 and '137 Patents. He was therefore responsible under 37 CFR 1.56 to disclose this material information to the USPTO during the reexamination proceedings. He chose not to. Hershkovitz's improper conduct also resulted in the failure to disclose this material information to the USPTO in violation of his duty of candor. On information and belief, had the examiner had access to the information discussed in the previous three paragraphs, he would not have allowed at least claims 1 and 26 of the '988 Patent, and claims 1, 26, 42 and 43 of the '137 Patent.

WASH_6584474.1

148.     Based on the above-stated numerous incidences of withholding information, misrepresenting information, omitting information and making false statements, Ballard, Taylor, Martinez and Hershkovitz have exhibited a pattern of misconduct during the prosecution of the '988 and '137 Patents, and the reexamination of those patents, establishing that the misconduct was intentional and not merely accidental and from which the inference of an intent to mislead the USPTO may be drawn.

149.     The '137 Patent is a child continuation-in-part of the '988 Patent and has extremely similar claimed subject matter as the '988 Patent.  The '137 Patent and the '988 Patent are closely intertwined and would be subject to the infectious enforceability doctrine.  In the event that one of the '988 and '137 Patents is found unenforceable due to inequitable conduct, both patents should be held unenforceable under the infectious enforceability doctrine.

## COUNTERCLAIMS

U.S. Bank alleges as its Counterclaims as follows:

1.     Counterclaim Plaintiff U.S. Bancorp is a Delaware corporation and has a place of business at 800 Nicollet Mall, Minneapolis, Minnesota 55402-7014.

2.     Counterclaim Plaintiff U.S. Bank National Association is a wholly owned subsidiary of defendant U.S. Bancorp and has a place of business at 425 Walnut Street, Cincinnati, Ohio 45202.

3.     This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. § § 1331, 1338(a), 2201 and 2202.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

5.     In its Fourth Amended Complaint for Patent Infringement, Plaintiff DataTreasury Corporation ("DataTreasury") alleges that it is the owner of the right, title and interest to the

45

'988, '137, '007, '759, '868 and '778 patents. DataTreasury further alleges that U.S. Bank has infringed the '988, '137, '007 and '868 patents.

6.     An actual controversy exists between DataTreasury and U.S. Bank by virtue of the allegations in Plaintiff's Fourth Amended Complaint in this action.

7.     The asserted claims of the '988, '137, '007, and '868 patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

8.     U.S. Bank has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claim of the '988, '137, '007 or '868 patents.

9.     The '988 and '137 patents are unenforceable by reason of inequitable conduct before the United States Patent and Trademark Office as set forth in paragraphs 75-149.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff U.S. Bank prays for the following relief:

A.     A judgment declaring each asserted claim of the '988, '137, '007 and '868 patents invalid.

B.     A judgment declaring that U.S. Bank has not directly infringed, contributorily infringed, or induced infringement of any valid and enforceable claim of the '988, '137, '007 and '868 patents.

C.     A judgment declaring that the '988 and '137 patents are unenforceable.

D.     A judgment deeming this to be an exceptional case under 35 U.S.C. § 285 and awarding U.S. Bank their attorney fees, expenses and costs in this action.

E.     Such other and further relief as the Court deems just and proper.

WASH_6584474.1

Dated: November 16, 2009                     Respectfully submitted,

                                           /s/ Liane M. Peterson

                                        John J. Feldhaus
                                        jfeldhaus@foley.com
                                        Liane M. Peterson
                                        lpeterson@foley.com
                                        FOLEY & LARDNER LLP
                                        3000 K Street, N.W., Suite 500
                                        Washington, D.C. 20007-5143
                                        Telephone: (202) 672-5300
                                        Facsimile: (202) 672-5399

                                        Melvin R. Wilcox, III
                                        mrw@yw-lawfirm.com
                                        Yarbrough & Wilcox PLLC
                                        100 E. Ferguson St.
                                        Tyler, Texas 75702
                                        Telephone: (903) 595-1133
                                        Fax: (903) 595-0191

                                        David J. Beck
                                        DBeck@brsfirm.com
                                        Michael Richardson
                                        MRichardson@brsfirm.com
                                        Tim Cleveland
                                        TCleveland@brsfirm.com
                                        Beck, Redden & Secrest LLP
                                        1221 McKinney, Suite 4500
                                        Houston, TX 77010
                                        Telephone: (713) 951-3700
                                        Fax: (713) 951-3720

                                        *Counsel for Defendants U.S. Bancorp and U.S.*
                                        *Bank National Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2009, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing instrument via the Court's CM/ECF filing system per Local Rule CV-5(a)(3).

/s/ Liane M. Peterson
Liane M. Peterson

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Amended Protective Order entered in this case on June 26, 2009.

/s/ Liane M. Peterson
Liane M. Peterson

WASH_6584474.1